IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

THE HAWK MOUNTAIN LLC, et al.,      )
                                    )
            Plaintiffs,             )
                                    )
    v.                              )   Civ. No. 13-2083-SLR/SRF
                                    )
RAYMOND A. MIRRA, JR., et al.,      )
                                    )
            Defendants.             )

## MEMORANDUM ORDER

At Wilmington this 31st day of August, 2016, having reviewed the June 3, 2016

Report and Recommendation issued by Magistrate Judge Sherry R. Fallon (D.I. 457),

plaintiffs' objections thereto (D.I. 459), and defendants' responses to the objections (D.I.

463-465);

IT IS ORDERED that, pursuant to 28 U.S.C. § 636(b)(1), the objections are over-

ruled and Judge Fallon's comprehensive and well-reasoned recommendations adopted,

for the reasons that follow:

1. **Background.** The second amended complaint ("SAC") filed in the above-

captioned litigation contains allegations, pursuant to the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, that defendants implemented a

scheme to defraud plaintiffs of millions of dollars through control of the business and

financial affairs of plaintiff Gigi Jordan ("Jordan").[1]  Defendants responded to the SAC

---

[1]In 1991, Jordan founded Ambulatory Pharmaceutical Services, Inc. ("APS"), a
healthcare company specializing in providing individualized home infusion services.

with motions to dismiss based on a variety of grounds.  Judge Fallon has recommended granting said motions.  Plaintiffs' objections shall be addressed seriatim.[2]

2. **Defendants' Pennsylvania and Delaware lawsuits constituted predicate acts within the statute of limitations.**  For this objection, plaintiffs rely on *CSX Transp., Inc. v. Gilkison*, 2012 WL 1598081 (N.D. W. Va. May 3, 2012), where the district court found that "the filing of a fraudulent lawsuit can constitute racketeering activity."  *Id.* at *11.  Aside from not being binding precedent, *CSX* is also distinguishable on its facts.  The mail and wire fraud violations alleged in *CSX* amounted "to more than mere claims for abuse of process or malicious prosecution. The third amended complaint describes a more complex scheme by the lawyer defendants - one that allegedly involved more than the filing and service of eleven fraudulent complaints."  *Id.* at *10.  In contrast, the lawsuits identified by plaintiffs at bar were by all public accounts legitimate efforts by the defendants seeking to discharge their duties as co-trustees of the Hawk Mountain Trust.  The Pennsylvania lawsuit was dismissed on jurisdictional grounds, and Vice Chancellor Parsons determined in the Delaware lawsuit that the co-trustees were entitled to a release and judicial discharge in their capacities as co-trustees and members of the HM LLC.  *See In re Hawk Mountain*

---

APS apparently was a very successful business venture which was sold in 1997 for more than $34 million in cash and stock options, which stock options generated millions of dollars in later transactions.  Thereafter, plaintiffs allege that defendants misappropriated Jordan's bank accounts, and created multiple fraudulent bank and brokerage accounts and trusts, as well as divested Jordan of her equity in several real properties.

[2]The court adopts the recommendations of Judge Fallon to which plaintiffs have not objected.  (*See* D.I. 465 at 2-3)

*Trust Dated December 12, 2002,* 2015 WL 5243328, at *2 (Del. Ch. Sept. 8, 2015). Moreover, Judge Fallon correctly held that, under Third Circuit precedent, plaintiffs' only alleged injuries (attorney fees and costs of litigation) were not directly related to the alleged fraudulent activity, *see, e.g., Kimmel v. Phelan Hallinan & Schmieg, P.C.,* 847 F. Supp. 2d 753, 771 n.15 (E.D. Pa. 2012), especially when the alleged fraudulent activity is tied to the same conduct and injuries predating the limitations period, *see, e.g., Matthews v. Kidder, Peabody & Co., Inc.,* 2000 WL 33726916, at *18 (W.D. Pa. Aug. 18, 2000).

3. **Plaintiffs may predicate their RICO claims on bank fraud.** Judge Fallon determined that plaintiffs did not have standing to bring their bank fraud claims, citing to, e.g., *Yesko v. Fell,* 2014 WL 4406849, at *11 (D. Md. Sept. 5, 2014) ("citing a series of cases from jurisdictions throughout the United States supporting this proposition"). (D.I. 457 at 35-36) Plaintiffs concede that there is a line of authority which holds that only financial institutions have standing to assert RICO claims predicated on bank fraud. "However, the R&R fails to address the considerable amount of other authority . . . which demonstrates that a non-bank plaintiff whose injuries are proximately caused by a bank's reliance on fraudulent misrepresentations does have standing to predicate her RICO claims on bank fraud." (D.I. 459 at 2-3) (emphasis not included)  The first such case cited by plaintiffs in this regard is *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070 (C.D. Cal. 2011). In that case, the district court did reason that, "[t]he fact that banks are the intended victims of the bank fraud statute . . . does not categorically mean that plaintiffs who were otherwise injured as a result of bank fraud cannot assert claims

3

under RICO." *Id.* at 1098. However, the court acknowledged the reality that banks (the targets of the alleged fraud) "are more direct victims than plaintiffs [and] can 'be counted on to vindicate the law as private attorneys general.'" *Id.* "[I]t is this reality that may have led other courts to hold that only banks can assert a RICO claims based on predicate acts of bank fraud. . . . The presence of a more direct victim thus weighs strongly against a finding that plaintiffs can assert a RICO claim based on bank fraud." *Id.* Judge Fallon did not err in her legal analysis.

4. **"Group Pleading" is permissible where - as here - information that would permit greater particularity is exclusively within the possession of a defendant, and defendants are alleged to have acted together to facilitate a general scheme.** The case law cited by plaintiffs in support of their objection is not inconsistent with that cited by Judge Fallon, that is, plaintiffs must meet the heightened pleading requirement of Fed. R. Civ. P. 9(b) for the predicate acts based on fraud. As explained by the Third Circuit in *Grant v. Turner*, 505 Fed. Appx. 107 (3d Cir. 2012), "[t]he purpose of the heightened pleading requirement in 9(b) is to 'place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants from spurious charges of immoral and fraudulent behavior.'" *Id.* at 111 (citation omitted). "This requires a plaintiff to plead the date, time, and place of the alleged fraud, or otherwise inject precision into the allegations by some alternative means." *Id.*

5. In the case at bar, as in *Grant*, defendants argued (and the district court held) that "each defendant has not been properly or sufficiently placed on notice of the exact

4

nature of the claims asserted, as these claims apply to each defendant." *Id.* at 112.
The Third Circuit in *Grant* reversed dismissal as to some of the defendants, based on
its conclusion that plaintiffs had sufficiently alleged that certain defendants in fact were
"'on notice of the precise misconduct with which they [were] charged,'" while other
defendants "deliberately concealed the identities of salespeople and agents" to
obfuscate "**who**, in particular, made the misrepresentation absent discovery." *Id.*
(citation omitted) (emphasis in original). "Given the closeness of this question, and the
fact that the Travel Club Defendants did not file a brief in response to Plaintiffs' appeal,
we believe that Plaintiffs' claims should be allowed to proceed in the District Court
against the remaining Travel Club Defendants." *Id.* In sum, the case law cited by
plaintiffs is distinguishable on the facts. Judge Fallon committed no errors in this
regard.

6. **The Third Circuit considers the existence of a fiduciary relationship
between the parties when applying the equitable tolling doctrine.** There is no
dispute that "'[f]raudulent concealment is an equitable doctrine that is read into every
federal statute of limitations[,] . . . and additionally, that it will toll the RICO limitation
period 'where a pattern remains obscure in the face of a plaintiff's diligence in seeking
to identify it.'" *Cetel v. Kirwan Financial Group,* Inc., 460 F.3d 494, 508-509 (3d Cir.
2006) (citations omitted). Nevertheless, "to benefit from the equitable tolling doctrine,
plaintiffs have the burden of proving three necessary elements," including that
defendants "actively misled" plaintiffs and that plaintiffs' "ignorance is not attributable to
[their] lack of reasonable due diligence in attempting to uncover the relevant facts." *Id.*

at 509.  With respect to the discovery element, "'the presence of a fiduciary relationship would be pertinent to the question of when a plaintiff's duty to investigate arose,'" because a fiduciary relationship "entails such a presumptive level of trust in the fiduciary by the principal that it may take a 'smoking gun' to excite searching inquiry on the principal's part into its fiduciary's behavior." *In re Mushroom Transp. Co., Inc.,* 382 F. 3d 325, 343 (3d Cir. 2004) (citations omitted).

7.  Judge Fallon held that "the federal common law equitable tolling doctrine does not recognize an exception for a fiduciary relationship when determining whether a defendant has actively misled a plaintiff."  (D.I. 457 at 26)  The case law cited by plaintiffs goes to a different element of the pleading standard, one that Judge Fallon addressed when she found that plaintiffs conceded in the SAC the existence of a "smoking gun" in the Separation and Distribution Agreement, which "reveal[ed] both the roadmap for the purpose and modus operandi employed by the Defendants in the conversion of Plaintiffs' assets by the Defendants."  (D.I. 47 at ¶ 291, quoted in D.I. 457 at 28)  Judge Fallon committed no errors in her analysis of the equitable tolling doctrine.

8.  **Dismissal should be without prejudice to re-plead.**  Plaintiffs argue in this regard that they "expect that all of the recommendations in the R&R, if adopted by the Court, could be remediated with an amended pleading."  (D.I. 459 at 6)  Of course, plaintiffs have already filed three complaints in the instant proceeding, the last one (the SAC) containing 422 averments on 123 pages.  Judge Fallon has recommended that the SAC be dismissed on statute of limitations grounds, as well as on the sufficiency of the RICO claims, and the court has accepted such recommendations.  The court concludes that any further attempts to "remediate" the pleadings would be futile.  *See*

6

*Foman v. Davis*, 371 U.S. 178 (1962).

9. **Supplemental jurisdiction.** Under the circumstances, the court declines to exercise its supplemental jurisdiction over plaintiffs' pendant state claim.

**IT IS FURTHER ORDERED** that:

10. The pending motions to dismiss (D.I. 62, 63, and 67) are granted with prejudice.

11. The motion for sanctions (D.I. 258) is denied.

12. The motion for leave to file a sur-reply (D.I. 305) is denied.

United States District Judge

7